**Martha E. CORD, Plaintiff,**

v.

**RELIANCE STANDARD LIFE INSURANCE COMPANY, Defendant.**

**No. CIV.A.02–1302–KAJ.**

United States District Court, D. Delaware.

March 30, 2005.

Carol J. Evon–Taylor, Esquire, Wilmington, DE, Counsel for Plaintiff.

Delia Clark, Esquire, Rawle & Henderson LLP, Wilmington, DE, Counsel for Defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

## I. INTRODUCTION

Plaintiff Martha E. Cord ("Plaintiff") brings this action seeking long term disability benefits from defendant Reliance Standard Life Insurance Company ("Defendant"). (Docket Item ["D.I."] 9.) Defendant issued a long term disability plan (the "Plan") to Plaintiff's former employer, Nanticoke Health Services. (D.I. 32 at ¶ 2; D.I. 53 at ¶ 1.) Plaintiff was a participant in the Plan and, therefore, her claims are governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Accordingly, jurisdiction is proper under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1).

Before me is a motion for summary judgment (D.I.31) filed by Defendant. For the reasons that follow, Defendant's motion will be granted.

## II. BACKGROUND

In 1994, Plaintiff was admitted to the hospital and diagnosed with Systemic Lupus Erythematosis ("SLE"). (D.I. 54 at 1.) At the time of the diagnosis, Plaintiff worked as a Registered Senior Mammographer and Registered Radiologic Technologist at Nanticoke. (D.I. 9 at 1.) As part of her employment, Plaintiff was eligible for disability insurance under the Plan. (Id.)

According to the disability policy, Defendant was to "pay a monthly benefit if an Insured: (1) is Totally disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) submits satisfactory proof of Total Disability to [Defendant]." (D.I. 33 at RSL0340–41.) "The Monthly benefit will stop on the earliest of: (1) the date the insured ceases to be Totally Disabled; (2) the date the Insured dies; (3) the Maximum Duration of Benefits, as shown on the Schedule of Benefits page; has ended; [or] (4) the date the insured fails to furnish the required proof of Total Disability." (Id. at RSL0341.) In order to be eligible for long term disability benefits during the first 24 months, an insured must be totally disabled from performing the material duties of his or her regular occupation. (Id. at RSL0339–40.) After the first 24 months, an insured must not be able to perform "the material duties of any occupation." (Id. at RSL0340.) "Any occupation" is defined as "one that the insured's education, training, or experience will reasonably allow." (Id.)

By early 1995, Plaintiff's SLE was in remission and she returned to work. (D.I. 54 at 1.) In August of 1995, however, Plaintiff was readmitted to the hospital for renal failure. (Id. at 1–2.) On March 21, 1996, Plaintiff's application for disability benefits was approved because of her SLE, which included complications of joint pain and renal failure. (D.I. 9 at 2; D.I. 54 at 2.) Plaintiff began receiving monthly benefits in February 1996, "subject to: periodic medical certification of [her] continuous disability ... provided by the physician who is treating [her.]" (D.I. 9 at 3.)

By October 22, 1997, Plaintiff had received 21 months of benefits. Defendant began reviewing Plaintiff's eligibility for benefits beyond February 1, 1998, but continued paying her benefits during the investigation. (*Id.*, Ex. B at 1.) In order to be eligible for benefits beyond February 1, 1998, Plaintiff had to be unable to perform the material duties of any occupation. (*Id.*) Defendant found that Plaintiff met the definition of total disability for a period of time. (D.I. 51 at 3.) However, on October 3, 2001, after evaluating Plaintiff's medical information from various sources, including vocational experts and Plaintiff's physicians, Defendant determined that Plaintiff was not entitled to benefits beyond November 1, 2001. (*Id.*, Ex. D at 1–2.)

Plaintiff's medical records indicated that her SLE had been stable since August of 1998. (D.I. 34 at RSL0500.) Dr. Wigley, Plaintiff's rheumatologist, examined her on December 20, 2000 and reported that although her mood had been "up and down," and she was experiencing "some difficulty with insomnia," her condition was stable, she had no physical complaints of joint pain, no skin rashes, and she had been "riding her son's four-wheeler." (*Id.* at RSL0427.) Dr. Ahmed, Plaintiff's psychiatrist, examined her on November 10, 2000, and reported that although Plaintiff was still having "some mild depressive episodes" and "problems with sleep," she was "fairly stable" and reported to be doing better overall. (D.I. 33 at RSL0369.) Defendant conducted a vocational review in September of 2001, taking into account Plaintiff's "medical condition and past training, education, and experience," and concluded that Plaintiff could perform the following occupations: "Hospital Admitting Clerk, Animal Hospital Clerk, Reproduction Order Clerk, and Mail Distribution Scheme Examiner." (D.I. 9, Ex. D at 1.) On October 3, 2001, Defendant notified Plaintiff that she "no longer [met her] policy's definition of Total Disability" and, therefore, she would not be entitled to benefits beyond November 1, 2001. (*Id.*, Ex. D at 1–2.)

Plaintiff appealed the termination decision on November 6, 2001. Although Plaintiff had not been examined by her treating physicians in nearly a year prior, she submitted reports written by Dr. Wigley and Dr. Ahmed in October and November 2001 stating that she was still totally disabled. (D.I. 33 at RSL0342, 47; D.I. 34 at RSL0427.) Defendant reviewed the reports and found no "sufficient proof to document the claim that [Plaintiff] suffers from a condition so severe it renders [her] unable to work." (*Id.*) On January 3, 2002, Defendant affirmed its decision to terminate Plaintiff's benefits. (*Id.* at RSL0339, 342.)

## III. STANDARD OF REVIEW

### A. Summary Judgment

■ Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment,

Rule 56(c) requires that the non-moving party "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.*, 475 U.S. at 587, 106 S.Ct. 1348 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## B. ERISA

■ The question before me is whether there is a genuine issue of material fact as to whether Defendant acted arbitrarily and capriciously when it concluded that Plaintiff was not totally disabled and, therefore, not eligible for long term benefits beyond November 1, 2001. According to the United States Supreme Court, "a denial of benefits challenged under [an ERISA plan] is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). If the benefit plan gives the administrator discretionary authority, the decision must be reviewed under the "arbitrary and capricious standard." *Id.* The "arbitrary and capricious standard" in a context such as this is essentially the same as an "abuse of discretion standard." *Nazay v. Miller*, 949 F.2d

1323, 1336 (3d Cir.1991). Under this standard, a reviewing court may overturn the administrator's decision "only if it is clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan." *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc.*, 222 F.3d 123, 129 (3d Cir.2000). The standard is deferential, and "the court is not free to substitute its own judgment for that of the defendant's in determining eligibility for plan benefits." *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 41 (3d Cir.1993).

■ "If [,however,] a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. The United States Court of Appeals for the Third Circuit has held that if a plan administrator both funds and administers a plan, a heightened standard of review must be applied. *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 387 (3d Cir.2000). Under the heightened standard, the reviewing court is "deferential, but not absolutely deferential," using a "sliding scale method, intensifying the degree of scrutiny to match the degree of conflict." *Id.* at 380. The reviewing court must not only look at the administrator's final decision, but also at the process by which the final decision was reached. *Id.*

## IV. DISCUSSION

Both parties agree that the benefit Plan in the present case gives Defendant discretionary authority. (D.I. 31 at 9; D.I. 54 at 6.) Thus, the arbitrary and capricious standard of review applies. (*Id.*) They also agree that because Defendant funds and

administers the Plan, Defendant is acting under an inherent conflict of interest and, therefore, heightened scrutiny under the arbitrary and capricious standard must be applied. (D.I. 31 at 9; D.I. 54 at 9.)

## A. Process

■ Plaintiff argues that Defendant deviated from procedural requirements and, therefore, the present case ought not be upheld on summary judgment. (D.I. 54 at 2–9.) Specifically, Plaintiff argues that Defendant's selective use of information demonstrates self-dealing and bias. (*Id.* at 9.) In *Pinto*, the Third Circuit held that "procedural anomalies," such as the "inconsistent treatment" of facts and medical authority without sufficient explanation, can put the court "on the far end of the arbitrary and capricious range," requiring the court to "examine the facts before the administrator with a high degree of skepticism." *Pinto*, 214 F.3d at 394.

Plaintiff argues that Defendant made the decision to discontinue her long term benefits without receiving additional medical information. (D.I. 54 at 2.) She asserts that from the time her long term benefits were first awarded in 1998, to the time Defendant decided to discontinue them in 2001, "her condition has remained relatively unchanged" and her "records do not reveal anything new that had not been noted previously in relation to her condition." (*Id.* at 2, 5.) Thus, it appears that Plaintiff is arguing that Defendant relied on the same evidence in 2001 to discontinue benefits as it relied on when it decided to award her benefits. (*Id.*) Defendant, however, set forth the following reasons for its decision in two letters it sent to Plaintiff: (1) Plaintiff's medical records from 1998 to 2000 indicated that Plaintiff's condition had stabilized and that her physical and mental conditions were improving, (2) a vocational review in 2001 conducted by Defendant indicated that Plaintiff was capable of performing several jobs, and (3)

Plaintiff submitted no medical treatment records for almost a year prior to Defendant's termination of benefits in November of 2001. (D.I. 33 at RSL0339–44.)

Plaintiff responds that Defendant used Dr. Wigley's opinion in a self-serving manner because it used part of his opinion to support its decision that Plaintiff was capable of work, i.e., his statement in December 2000 that Plaintiff's condition was stable and she had no physical complaints, but then it rejected Dr. Wigley's conclusion in November 2001 that Plaintiff was totally disabled. (D.I. 54 at 9; D.I. 33 at RSL0347; D.I. 34 at RSL0427.) Defendant argues that it rejected Dr. Wigley's November 2001 opinion for three reasons. (D.I. 31 at 11–13.) First, Plaintiff had not been to see Dr. Wigley in almost a year prior to asking him for a report, nor did he examine her before making the determination that she was still totally disabled. (*Id.* at 13 n. 1.) Second, his diagnosis concerning Plaintiff's mental condition was not supported by Plaintiff's treating psychiatrist. (*Id.* at 11.) Third, his chronic fatigue diagnosis was not supported by medical tests. (*Id.*)

■ In *Pinto*, the Third Circuit concluded that a defendant's selectivity with medical evidence was self-serving because the defendant failed to explain why it chose to reject the doctor's conclusions. *Pinto*, 214 F.3d at 393. Plan administrators are not automatically required to give special weight to a claimant's physician, but they "may not arbitrarily refuse to credit a claimant's reliable evidence." *The Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 823, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003).

Despite Plaintiff's contentions, there is insufficient evidence to show that Defendant's interpretation of the available information was simply self-serving. On the contrary and as already noted above, Defendant did explain its reasons for reject-

ing Dr. Wigley's November 2001 opinion. Therefore, Defendant is correct in asserting that "deference due to [Defendant] should only be decreased to the degree that its decision was influenced by its dual role" as the administrator and provider of funds. (D.I. 51 at 9.)

## B. Result

■ Defendant contends that summary judgment is appropriate because Plaintiff failed to provide sufficient records to justify benefits beyond November 2001, and therefore the decision to discontinue her long term benefits was not arbitrary or capricious. (D.I. 33 at RSL0343–44.) According to Plaintiff's disability policy, she is entitled to benefits only if she "is under the regular care of a Physician" and "submits satisfactory proof of Total Disability to [Defendant]." (*Id.* at RSL0341.) If she "fails to furnish the required proof of Total Disability," Defendant may terminate her benefits. (*Id.*) The burden of proof is on the claimant to show that the administrator's decision as to whether the claimant is totally disabled was arbitrary and capricious, "given the information available." *Pinto,* 214 F.3d at 394. Defendant does not have a duty to "make a good faith, reasonable investigation" or "gather more information." *Id.* The question is whether Defendant's decision was arbitrary and capricious "given the information available." *Id.*

■ Plaintiff's responds that as of 2001, "her physical condition and the medication she takes prevents her from any type of gainful employment and she remains totally disabled in any meaning of the word." (D.I. 9 at 5.) However, Defendant's decision to the contrary was based on a review of a vocational evaluation, medical records, and lifestyle evidence.

(D.I.31.) Plaintiff's vocational review in 2001 found several occupations suitable to Plaintiff's training, education, and experience. (D.I. 33 at RSL0355.) Her medical records indicated that her SLE condition had been well-controlled and stable since August 1998, that she had no physical complaints as of December 2000, and that she only suffered mild depressive episodes as of November 1, 2000, without relapse as of November 10, 2000. (D.I. 34 at RSL0427, 499; D.I. 33 at RSL0369.) Her medical records also indicated that she had been "active in the yard" and "riding her son's four-wheeler." (D.I. 34 at RSL0471, 427.)

After Plaintiff's benefits were terminated in October of 2001, Defendant invited Plaintiff to submit additional information and an updated medical history demonstrating that she was still totally disabled. (D.I. 9, Ex. D at 2.) Plaintiff had her treating physicians submit reports in October and November 2001 stating that Plaintiff was totally disabled. (D.I. 33 at RSL0339.) Neither of the doctors, however, had seen or examined Plaintiff in almost a year prior to the time each report was written, nor examined Plaintiff before writing the reports.[1] (*Id.* at RSL0347, 349. ) Furthermore, Plaintiff does not refute Defendant's assertion that she failed to provide evidence to support her claim that her medications caused impairment and prevented her from working. (D.I. 51 at 5–6.) These reasons suggest that Defendant's decision not to rely exclusively on the treating doctors' 2001 medical reports was not the result of self dealing, but rather, the result of a plan administrator exercising its discretion within acceptable bounds. *See Stratton v. E.I. DuPont De Nemours & Co.,* 363 F.3d 250, 258 (3d Cir.2004) (noting it was not arbitrary for a

---

1. Although Dr. Ahmed's report does not explicitly state the last time he examined Plaintiff, Plaintiff does not contest Defendant's assertion that Dr. Ahmed last examined her in November 2000.

benefits administrator to be wary of a doctor's opinion rendered before the doctor had an updated MRI).

## V. CONCLUSION

Defendant's decision to terminate Plaintiff's long term benefits was reasonably consistent with the medical records available and, therefore, Defendant's decision cannot be said to be arbitrary or capricious. Given that standard, and even when viewing the evidence in the light most favorable to the Plaintiff, Defendant's Motion for Summary Judgment (D.I.31.) must be granted. An appropriate order will follow.

### ORDER

For the reasons set forth in the Memorandum Opinion issued in this matter today, IT IS HEREBY ORDERED that defendant Reliance Standard's Motion for Summary Judgment (D.I.31) is GRANTED.